IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOHN LEON GATEWOOD,           )     CIVIL 17-00090 LEK-KJM
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
APRIL McNEIL; TUI FAATEA,     )
                              )
          Defendants.         )
_____)

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT APRIL MCNEIL'S MOTION FOR SUMMARY JUDGMENT**

          Before the Court is Defendant April McNeil's ("McNeil")

Motion for Summary Judgment ("Motion"), filed on June 18, 2018.

[Dkt. no. 122.]  Pro se Plaintiff John Leon Gatewood

("Plaintiff") filed two memoranda in opposition on July 10, 2018,

and McNeil filed her reply memorandum on July 27, 2018.  [Dkt.

nos. 145 ("First Opp."), 146 ("Second Opp."), 154.]  The Court

finds this matter suitable for disposition without a hearing

pursuant to Rule LR7.2(d) of the Local Rules of Practice of the

United States District Court for the District of Hawai`i ("Local

Rules").  McNeil's Motion for Summary Judgment is hereby granted

in part and denied in part for the reasons set forth below.

**BACKGROUND**

          Plaintiff filed his original complaint on March 2,

2017, and he filed an amended complaint on April 24, 2017.  [Dkt.

nos. 1, 8.]  On April 30, 2018, Plaintiff filed his Prisoner

Civil Rights Complaint - Second Amended Complaint ("Second
Amended Complaint"), alleging a retaliation claim against McNeil
and Defendant Adult Correctional Officer ("ACO") Faatea
("Faatea"). [Dkt. no. 102.] This claim has been construed as a
42 U.S.C. § 1983 claim alleging a violation of Plaintiff's First
Amendment rights. See Order Dismissing Complaint in Part and
Denying Assistance of Counsel, filed 4/11/17 (dkt. no. 6)
("4/11/17 Order"), at 6, 12-13 (discussing retaliation claim in
Plaintiff's original complaint).[1]

Plaintiff's claim arises from an altercation between
him and Faatea on September 18, 2015 ("Incident"), when Plaintiff
was an inmate at the Waiawa Correctional Facility ("WCF").
[Second Amended Complaint at pg. 5.] Plaintiff alleges Faatea
struck and pushed Plaintiff, but Plaintiff was sent to solitary
confinement and was subjected to unfair disciplinary proceedings.
[Id.] At the time of the Incident, April McNeil was a Sergeant
at WCF. [Separate and Concise Statement of Facts in Supp. of
Def. April McNeil's Motion for Summary Judgment ("McNeil CSOF"),
filed 6/18/18 (dkt. no. 123), Decl. of April McNeil ("McNeil
Decl.") at ¶¶ 2-3.[2]] Plaintiff alleges he informed McNeil and
the WCF staff that he would be pressing charges against Faatea

_____

[1] The 4/11/17 Order is also available at 2017 WL 1356319.

[2] McNeil retired on November 1, 2015. [McNeil Decl. at
¶ 4.]

for striking and pushing him. [Second Amended Complaint at pg. 5.] Plaintiff alleges McNeil retaliated against Plaintiff, and she and Faatea prepared "falsified documents" to ensure that Plaintiff's disciplinary proceedings were "unfair." [Id.]

Faatea submitted multiple incident reports all dated September 18, 2015. [McNeil CSOF, Decl. of Teresa Miike ("Miike Decl."),[3] Exh. 1 at 10008-09 (first 9/18/15 incident report), 10010-11 (second 9/18/15 incident report); 10016-17 (third 9/18/15 incident report) (collectively "Faatea Incident Reports").[4]] McNeil received Faatea's incident report on September 19, 2015.[5] [Miike Decl., Exh. 1 at 10014 (Memo from McNeil to Lieutenant Nalei Cox ("Lieutenant Cox") dated 9/19/15).] According to the Faatea Incident Reports, Plaintiff arrived at the Health Care Unit ("HCU") at WCF complaining of an infection in his mouth. Faatea explained to Plaintiff that he was on the dental clinic list, and ordered him to leave the HCU. Plaintiff refused to leave, spoke with other inmates during the

---

[3] Teresa Miike is the WCF custodian of records. [Miike Decl. at ¶¶ 4-5.]

[4] Exhibit 1 to the Motion, [dkt. no. 122-1,] is a nonconsecutively paginated document that is comprised of Bates numbers 10001-29, 10032-33, and 10035-36. The Miike Declaration authenticates the document, although she does not identify it as "Exhibit 1." See Miike Decl. at ¶ 6.

[5] McNeil does not state which version of Faatea's September 18, 2015 report she received.

altercation, and stared at Faatea threateningly.  [Miike Decl.,
Exh. 1 at 10008-09 (first 9/18/15 incident report).]  Plaintiff
was later charged with: 1) using force or threatening a
correctional worker; 2) refusing to obey an order; 3) being in an
unauthorized area; 4) lying or providing false statements; and
5) unauthorized contact with the public or other inmates.  [Miike
Decl., Exh. 1 at 10012 (Memo dated 9/19/15 from Lieutenant Cox to
Captain Sean Ornellas ("Captain Ornellas")).]

On September 18, 2015, McNeil informed Captain Ornellas
of the Incident.  [Id.]  On September 19, 2015, McNeil provided a
copy of Faatea's incident report to Captain Ornellas, and
Plaintiff was "locked down" that same day.  [Id. at 10014 (Memo
dated 9/19/15 from McNeil to Captain Ornellas regarding the
Incident and Plaintiff's discipline).]  Captain Ornellas then
instructed McNeil to investigate the Incident.  [Id. at 10015
(memo from Lieutenant Cox to Captain Ornellas regarding assigning
McNeil to investigation).]  On September 22, 2015 and
September 24, 2015, McNeil interviewed Plaintiff about the
Incident.  [Id. at 10020-21 (WCF documentation of Plaintiff's
9/22/15 and 9/24/15 interviews).]  McNeil also interviewed inmate
Cory Anderson on September 22, 2015, and obtained his written
statement.  [Id. at 10022 (Anderson written statement dated
9/22/15), 10023-24 (WCF documentation of Anderson's 9/22/15
interview).]  Finally, McNeil interviewed Faatea on September 24,

2015. [Id. at 10025-26 (WCF documentation of Faatea's 9/24/15

interview).] McNeil prepared and submitted her investigative

report to Lieutenant Cox on September 25, 2015. [Id. at 10001-07

(report signed by McNeil on 9/25/15 ("McNeil Report")).]

On October 9, 2015, a Facility Adjustment hearing was

held, with Lieutenant David Sayurin ("Lieutenant Sayurin")

presiding as the Facility Adjustment Committee Chairman.[6] [Id.

at 10027-29 (WCF Facility Adjustment Hearing Processing Form).]

Plaintiff was found guilty of charges one through four, but not

guilty of charge five. He was sent to solitary confinement for a

total of fifty days, with twenty-one days of credit for pre-

hearing detention. [Id. at 10029.] On October 27, 2015,

Plaintiff filed a grievance.[7] [McNeil CSOF, Decl. of

Charles Laux ("Laux Decl.") at ¶¶ 11-12 (noting Plaintiff filed

five grievances between 2003 and 2015, one each on September 11

---

[6] The "Facility Adjustment Hearing" is also referred to as
the "misconduct hearing" (hereinafter "misconduct hearing").
[Mem. in Supp. of Motion at 5.]

[7] Separately, on February 8, 2016, Plaintiff initiated an
action with the Circuit Court of the First Circuit, State of
Hawai`i in Gatewood v. State of Hawai`i, et al., Civil No. 16-1-
0128-01 KKH, alleging assault, in violation of Haw. Rev. Stat.
§ 707-712, unlawful imprisonment, in violation of Haw. Rev. Stat.
§ 707-721, and a violation of "HRS 108-856" ("State Action").
[Second Amended Complaint at pg. 3.]

and October 1, 2003 and October 9, November 22, and November 25, 2015).[8]]

McNeil argues there is no genuine issue of material fact that she: had no knowledge of Plaintiff's intent to engage in a protected activity; and accordingly, had no retaliatory intent in assisting with the resulting investigation and misconduct hearing that followed the Incident. Further, McNeil asserts Plaintiff cannot show that: she made false statements in the McNeil Report because of Plaintiff's intent to engage in a protected activity, *i.e.*, filing a grievance against Faatea; or, even if the McNeil Report contained false statements, Plaintiff was placed in solitary confinement because of those statements. McNeil points out that no document, including Plaintiff's own contemporaneous handwritten statement, demonstrates that he intended to make a claim. [Mem. in Supp. of Motion at 3.]

## DISCUSSION

### I.  Special Considerations for a Pro Se Litigant

McNeil argues Plaintiff's two memoranda in opposition, fail to show there is a genuine issue of material fact. [Reply

---

[8] Charles Laux is an Inmate Grievance Specialist at Halawa Correctional Facility. [Laux Decl. at ¶ 1.] His office processes WCF grievances because WCF does not have a facility grievance officer. [<u>Id.</u> at ¶ 8.] The Laux Declaration does not describe the substance of Plaintiff's filed grievances, nor does McNeil attach any of the grievances as an Exhibit in support of the Motion.

6

at 2.]  In a footnote, McNeil argues: neither the First

Opposition nor the Second Opposition include any declarations or

admissible evidence; both fail to comply with the district

court's Local Rules requiring a separate concise statement; and

thus, should be disregarded for those reasons.  [Id. at 2 n.1.]

With regard to Plaintiff's evidence, Plaintiff's First

Opposition and Second Opposition both include his declaration

"under the Penalty of Perjury that the foregoing is true and

correct," pursuant to 28 U.S.C. § 1746.[9]  [First Opp. at 12;

_____

[9] 28 U.S.C. § 1746 provides, in pertinent part:

> Wherever, under any law of the United States or
> under any rule, regulation, order, or requirement
> made pursuant to law, any matter is required or
> permitted to be supported, evidenced, established,
> or proved by the sworn declaration, verification,
> certificate, statement, oath, or affidavit, in
> writing of the person making the same (other than
> a deposition, or an oath of office, or an oath
> required to be taken before a specified official
> other than a notary public), such matter may, with
> like force and effect, be supported, evidenced,
> established, or proved by the unsworn declaration,
> certificate, verification, or statement, in
> writing of such person which is subscribed by him,
> as true under penalty of perjury, and dated, in
> substantially the following form:
>
> . . . .
>
>> (2) If executed within the United States, its
>> territories, possessions, or commonwealths:
>> "I declare (or certify, verify, or state)
>> under penalty of perjury that the foregoing
>> is true and correct. Executed on (date).
>> (Signature)".

Second Opp. at 9.[10]]  An unsworn statement made under penalty of

perjury is admissible evidence in a motion for summary judgment.

See § 1746; <u>Shepard v. Quillen</u>, 840 F.3d 686, 687 n.1 (9th Cir.

2016) (citations omitted).

Second, the Court notes that pro se filings are "held

to less stringent standards than those of their legal

counterparts."  <u>See</u> <u>Welsh v. Wilcox Mem'l Hosp.</u>, Civil No. 12-

00609, 2012 WL 6047745, at *1 (D. Hawai`i Dec. 4, 2012) (citing

<u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam); <u>Jackson</u>

<u>v. Carey</u>, 353 F.3d 750, 757 (9th Cir. 2012)).  Although not

formatted according to Local Rule 56.1, Plaintiff essentially

identified the disputed facts and cited with particularity to the

supporting evidence in the record.  Accordingly, the Court will

consider Plaintiff's arguments and exhibits in ruling on McNeil's

Motion.

## II.  <u>Plaintiff's Retaliation Claim</u>

With regard to a prisoner's claim for retaliation in

violation of his First Amendment, the plaintiff must establish:

"(1) [a]n assertion that a state actor took some adverse action

against an inmate (2) because of (3) that prisoner's protected

_____

[10] Plaintiff's Second Opposition consists of multiple
documents that are not consecutively paginated.  All citations to
the Second Opposition and sections therein refer to the page
numbers assigned by the district court's electronic case filing
system.

conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

McNeil contends, for the purpose of the Motion, that Plaintiff's solitary confinement is the adverse action, and that the third, fourth, and fifth elements of a claim for retaliation are satisfied. [Mem. in Supp. of Motion at 9.] Thus, the Court will not address the merits of the first, third, fourth, and fifth elements of Plaintiff's retaliation claim and will only address causation. McNeil argues she is entitled to summary judgment since Plaintiff cannot present any evidence to show that McNeil had retaliatory motive. However, it is unclear from the Second Amended Complaint whether Plaintiff's retaliation claim is based on: his initial placement in solitary confinement on September 19, 2015, immediately following the Incident; the allegedly false McNeil Report and Faatea Incident Reports; the outcome of Plaintiff's disciplinary proceedings; or all of the foregoing. Falsification of a report is deemed a retaliatory act in and of itself. See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (recognizing § 1983 retaliation claim where the prisoner alleged a correctional officer filed a false report in retaliation for the prisoner reporting officer misconduct); Hines

v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (prison guard's false accusation of a prisoner's rule violation made after the prisoner used the grievance system deemed retaliatory). The Court liberally construes Plaintiff's Second Amended Complaint as alleging retaliatory acts based on Plaintiff's initial placement in solitary confinement, the alleged false reporting, and Plaintiff's misconduct hearing resulting in fifty days in solitary confinement. See, e.g., Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing Boag v. MacDougall, 454 U.S. 364, 365, 102 S. Ct. 700, 701, 70 L.Ed. 2d 551 (1982) (per curiam))).

In order for Plaintiff's § 1983 retaliation claim to survive summary judgment, he must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact." See Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). To raise a triable issue as to a defendant's motive, the plaintiff must present "'either direct evidence of retaliatory motive or at least one of the three general types of circumstantial evidence [of that motive].'" McCollum v. California Dept. of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)). If there is no direct evidence, the plaintiff must "present circumstantial evidence of motive, which

10

usually includes: '(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual.'" Id. (quoting Allen, 283 F.3d at 1077). Since Plaintiff has not provided direct evidence of McNeil's motive, the Court examines whether there is circumstantial evidence as to each of the alleged retaliatory acts.

### A.   McNeil Report

First, there is a temporal closeness between Plaintiff's complaint to HPD and the McNeil Report that may support an inference of retaliatory motive. HPD arrived at WCF on September 21, 2015 to investigate Plaintiff's complaint, only four days before the conclusion of the McNeil Report. See First Opp. at 2 (noting HPD investigation at WCF on 9/21/15); Miike Decl., Exh. 1 at 10007 (page seven of the McNeil Report dated 9/25/15). In the Motion, McNeil argues there is no temporal proximity since it was not until October 27, 2015 that Plaintiff actually filed his grievance against Faatea. McNeil also submits testimony that she does not recall nor does she have any knowledge of Plaintiff's intent to file a grievance against Faatea. [McNeil Decl. at ¶¶ 11-12.] McNeil points to

11

Plaintiff's failure to file a report against Faatea with HPD during their September 21, 2015 investigation, and also notes Plaintiff never mentioned filing a grievance in any of his interviews or written statements regarding the Incident. McNeil contends Plaintiff only called HPD to retaliate against WCF for placing Plaintiff in solitary confinement.

However, Plaintiff has submitted testimony that McNeil knew of Plaintiff's complaint and request to press charges against Faatea because HPD came to investigate Plaintiff's report of "inappropriate touching on an inmate by [Faatea]." [First Opp. at 2.] Plaintiff argues that, as the investigating officer, McNeil should have known before concluding her investigation and finalizing the McNeil Report that Plaintiff had requested to press charges against Faatea. [Id.] Moreover, Plaintiff asserts that, on September 24, 2015 as McNeil interviewed Plaintiff in the course of her investigation, McNeil told him that he would have been released from solitary confinement earlier, had he not contacted HPD. [Id. at 3, 7.]

There is conflicting testimony as to whether McNeil knew of Plaintiff's intent to file a grievance, and the resolution of that conflict would require credibility determinations, which are inappropriate on a motion for summary judgment. See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011) ("[C]redibility determinations, the weighing of

12

the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (citation and quotation marks omitted)).  Further, McNeil has not produced evidence to support her argument that the HPD call was not made under the auspices of the First Amendment.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (movant bears the burden of proof and persuasion on a motion for summary judgment).

    "Where an adverse action occurs shortly after the protected conduct, [the Ninth Circuit] has held that the timing creates an inference of retaliatory motive." Slice v. Ferriter, 448 F. App'x 725, 726 (9th Cir. 2011) (some citations omitted) (citing Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003)).  A trier of fact may reasonably conclude that the timing of the HPD investigation - four days before conclusion of the McNeil Report - is circumstantial evidence of McNeil's retaliatory motive.

    Second, there is some evidence that McNeil expressed opposition to Plaintiff's protected activity.  Plaintiff asserts McNeil told Plaintiff he would have been released from solitary confinement earlier had he not filed a complaint with HPD.[11] [First Opp. at 3.]  The Court also considers the alleged

_____

    [11] McNeil denies that she ever made this statement.  [Reply at 3.]  Thus, there is a dispute of material fact that precludes summary judgment.  See Bravo, 665 F.3d at 1083.

13

falsification of the McNeil Report, if true, to be possible evidence of McNeil's opposition to Plaintiff's engaging in a protected activity. Thus, the second category of circumstantial evidence of a retaliatory motive is present. See McCollum, 647 F.3d at 882 (citation omitted).

Third, McNeil argues the McNeil Report was in no way false or pretextual and was based on a compilation of witness statements and facts.[12] The Ninth Circuit applies the "some evidence" standard in reviewing a prisoner's complaint that he or she was falsely accused of a rules violation. See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).

> In Superintendent v. Hill, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985), the [United States] Supreme Court considered the deference courts must afford a prison disciplinary board's finding that a prisoner committed an infraction where the punishment is the loss of good time credits. Hill held that if there is even "some evidence" to support the prison's disciplinary decision, the requirements of due process are

---

[12] McNeil attached the Declaration of Patsy M. Takemura and Plaintiff's deposition transcript dated June 27, 2018 to her Reply. [Reply at 7, Decl. of Patsy M. Takemura ("Takemura Reply Decl.") Exh. 4 (excerpts of trans. of Pltf.'s 6/27/18 depo. ("Plaintiff Depo.")) at 61.] McNeil argues the only portion of the McNeil Report that Plaintiff testified he took issue with was a handwritten date of September 24, 2015 at 10021, which had the number "4" written over multiple times even though he had dated the document September 22, 2015. See Miike Decl., Exh. 1 at 10021 (Plaintiff's 9/24/15 interview response). Since McNeil did not seek leave of Court to file either the declaration or the additional exhibit after filing her concise statement, the Court will not consider the submitted materials. See Local Rule LR56.1(f)&(h).

satisfied. 472 U.S. at 455, 105 S. Ct. at
2773–74.

Id. However, this rule only applies to prison disciplinary board findings, and not to correctional officers. Id. at 269. Since McNeil is not a hearings officer, and she admits she did not have authority to influence the misconduct hearing, [McNeil Decl. at ¶ 19,] the McNeil Report is not treated with the same deferential standard as a hearings officer's decision. Further, the McNeil Report appears to contain a discrepancy between Plaintiff's statements and Faatea's recollection of the events with regard to Plaintiff elbowing Faatea, which Faatea only added during her second interview on September 24, 2015, but omitted in her first two written statements. [Miike Decl., Exh. 1 at 10008-11 (Faatea incident report), 10025-26 (WCF documentation of Faatea's 9/24/15 interview).] Mr. Anderson's statement and interview do not corroborate Faatea's claim that Plaintiff elbowed her. [Id. at 10022 (Anderson statement), 10023-24 (WCF documentation of Anderson's 9/22/15 interview).] At the very least, there is a disputed issue of material fact as to whether the McNeil Report was accurate, and if there was a pretextual reason related to Plaintiff's intent to file a grievance or his complaint to HPD. Accordingly, the Court concludes there are triable issues of fact as to McNeil's retaliatory motive with regard to the McNeil

Report to survive summary judgment, and denies summary judgment as to this portion of Plaintiff's § 1983 retaliation claim.

## B. <u>Solitary Confinement</u>

With regard to Plaintiff's initial placement in solitary confinement on September 19, 2015, Plaintiff has not offered any testimony or evidence to create a disputed issue of material fact with regard to McNeil's testimony that she had no knowledge of Plaintiff's intent to file a grievance against Faatea. Plaintiff only disputes that McNeil knew of his intent to engage in a protected activity upon HPD's September 21, 2015 investigation at WCF, which preceded the McNeil Report and Plaintiff's misconduct hearing. In order to sustain a retaliation claim, Plaintiff must be able to prove that McNeil acted "because of" Plaintiff's protected conduct. <u>See</u> <u>Rhodes</u>, 408 F.3d at 567; <u>see</u> <u>Wood v. Yordy</u>, 753 F.3d 899, 905 (9th Cir. 2014) (mere speculation that defendant acted out of retaliation without evidence of prior knowledge of protected activity not sufficient). There is no evidence in the record to create a disputed issue as to McNeil's knowledge of Plaintiff's intent to file a grievance, before he was put in "lock down" on September 19, 2015. Accordingly, the Court grants summary judgment to McNeil as to the portion of Plaintiff's claim relating to his initial placement in solitary confinement. <u>See</u> Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law.").

### C. **Misconduct Hearing**

Further, there is no evidence in the record to create a
triable issue as to causation with regard to either Plaintiff's
misconduct hearing, or its outcome. McNeil argues that, even if
the McNeil Report had been falsified, she was not the ultimate
cause of the outcome of Plaintiff's misconduct hearing which was
conducted by Lieutenant Sayurin. This Court agrees. "The
inquiry into causation must be individualized and focus on the
duties and responsibilities of each individual defendant whose
acts or omissions are alleged to have caused a constitutional
deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988)
(some citations omitted) (citing Rizzo v. Goode, 423 U.S. 362,
370-71, 375-77, 96 S. Ct. 598, 603-04, 606-07, 46 L. Ed. 2d. 561
(1976)).

McNeil submitted the Declaration of Lieutenant Sayurin,
who states he was the sole committee member at Plaintiff's
misconduct hearing. [McNeil CSOF, Decl. of David Sayurin
("Sayurin Decl.") at ¶ 9.] Lieutenant Sayurin asserts he
reviewed McNeil's report, but also spoke to both Plaintiff and
Faatea several times in order to "hear directly from them what
happened" and to clarify portions of the McNeil Report. [Sayurin
Decl. at ¶¶ 10-11.] Lieutenant Sayurin did not have reason to

17

believe the McNeil Report was false because the statements were consistent with Lieutenant Sayurin's witness interviews. [Sayurin Decl. at ¶ 12.] Further, Lieutenant Sayurin stated any errors or false statements in the McNeil Report would not have affected his decision since he made an independent assessment based on his own interviews, Plaintiff's statements, and his review of the facts of the allegations. [Sayurin Decl. at ¶ 13.]

Plaintiff has not challenged or submitted any evidence to create a disputed issue as to McNeil's assertion – and Lieutenant Sayurin's Declaration – that it was Lieutenant Sayurin's sole duty to preside over the misconduct hearing and arrive at his independent conclusion. Plaintiff argues Lieutenant Sayurin found Plaintiff guilty of the exact offenses identified in the McNeil Report;[13] however, this does not create a disputed issue of fact where Plaintiff has not produced any admissible evidence to challenge Lieutenant Sayurin's statements. Plaintiff has demonstrated that he understands that, on a motion for summary judgment, he must identify the disputed facts and point to evidence supporting his position, and has done so in both his First Opposition and Second Opposition. Accordingly,

---

[13] Contrary to Plaintiff's arguments, Lieutenant Sayurin did not find Plaintiff guilty of "Chg.#5: 13.03 4.0.4 a.8 (19) Unauthorized contacts with the public or other inmates." [Miike Decl., Exh. 1 at 10036 (Notice of Report of Misconduct Hearing dated 10/9/15).] Lieutenant Sayurin noted "[t]here is insufficient evidence to support the charges." [Id.]

there are no disputed issues of fact that Lieutenant Sayurin:
presided over Plaintiff's misconduct hearing alone; independently
interviewed Plaintiff and Faatea; and made an independent
decision as to Plaintiff's guilt. Thus, McNeil has met her
burden in establishing that, even if she had a retaliatory
motive, she was not the cause of the outcome of Plaintiff's
misconduct hearing, which was handled independently by
Lieutenant Sayurin.

## III. **Other Issues**

The First Opposition contains a separate section
entitled "Confidential Documents Protected for Non-Disclosure
Order." [First Opp. at 10.] Plaintiff identified thirteen
different documents that he asked the Court to review in support
of his memoranda in opposition. [Id. (citing DPS Nos. 0005,
0014-17, 0047-50, 0052, 0055-57, 0076, 0092).] Plaintiff offers
no other information with regard to what evidence the documents
might contain, or why he was unable to attach it to his memoranda
in opposition.

The Court considers the magistrate judge's prior order
granting in part and denying in part Plaintiff's motion to compel
documents, and approving DPS's protective order of its
confidential records produced in this matter. [Order Granting
Non-Party Department of Public Safety's [Proposed] Protective
Order, Instructions Regarding Subpoenas Filed on November 6, 2017

19

and Order Granting in Part and Denying in Plaint Plaintiff's
Motion to Compel Discovery Filed on January 22, 2018; and In
Camera Review, filed 6/13/18 (dkt. no. 118) ("6/13/18 Order").]
The 6/13/18 Order stated the magistrate judge would perform an in
camera review to determine whether DPS's documents were
discoverable, then, if any confidential records could be
produced, Plaintiff would be allowed to access the records upon
request. [Id. at ¶¶ 3-4.] Pursuant to the 6/13/18 Order, the
magistrate judge conducted an in camera review of the DPS
records, and ordered production of: "(i) redacted DPS 0001-DPS
0201; (ii) DPS' production log; and (iii) DPS' privilege log
pursuant to the [6/13/18 Order]." [Minutes, filed 6/19/18 (dkt.
no. 126) ("6/19/18 Minutes").] Accordingly, the records
identified by Plaintiff appear to have been available to him upon
request, pursuant to the 6/13/18 Order and 6/19/18 Minutes. The
Court will not excuse Plaintiff's failure to attach records in
support of his memoranda in opposition, especially where there is
no indication what the cited records contain, or what specific
circumstances made it impossible for Plaintiff to access the
documents.

### CONCLUSION

On the basis of the foregoing, McNeil's Motion for
Summary Judgment, filed June 18, 2018, is HEREBY GRANTED IN PART
AND DENIED IN PART. The Motion is GRANTED as to the portion of

20

Plaintiff's retaliation claim based on his placement in solitary confinement and his misconduct hearing.  The Motion is DENIED as to the portion of Plaintiff's retaliation claim based on McNeil's alleged falsification of the incident report dated September 25, 2015.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 29, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOHN LEON GATEWOOD VS. APRIL MCNEIL, ET AL; CIVIL 17-00090 LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT APRIL MCNEIL'S MOTION FOR SUMMARY JUDGMENT**